UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CINDY PERRON,

        Plaintiff,

v.                               Case No.  8:23-cv-2051-WFJ-SPF

MARTIN O'MALLEY,
Commissioner of the Social Security
Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

### I.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 75).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 75–104).  Plaintiff then requested an administrative hearing (Tr. 111–12).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 44–74).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15–43).  Subsequently,

Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–14).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1986, claimed disability beginning April 3, 2021 (Tr. 75).  Plaintiff obtained a high school education and took some classes toward a degree in nursing (Tr. 25, 55–56, 237).  Plaintiff's past relevant work experience included work as a waitress, a receptionist, and a certified nurse assistant ("CNA") (Tr. 34).  Plaintiff alleged disability due to back injury, arthritis, depression, and anxiety (Tr. 76).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2026 and had not engaged in substantial gainful activity since April 3, 2021, the alleged onset date (Tr. 20–21).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status-post lumbar fusion surgeries with post-laminectomy syndrome and radiculopathy; depression; and anxiety (Tr. 21).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with the following additional limitations:

> with option to change from sitting to standing for a brief change in position every 20 to 60 minutes while remaining on task; never climbing, never crawling, never kneeling; occasional operation of foot controls bilaterally; occasionally stooping and crouching; never

> balancing on slippery, uneven, or erratically moving surfaces; would
> need the use of a cane for ambulation to and from the work station, but
> not needed while performing seated tasks; occasional overhead reaching
> bilaterally; never exposed to unprotected heights, never operate
> dangerous machinery; occasional exposure to extreme cold and
> industrial vibration. Work is limited to routine and repetitive tasks,
> performed in a work environment free from fast-paced assembly-line
> type production requirements.

(Tr. 24–25).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective

complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce the symptoms

alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the medical evidence and other evidence (Tr.

25–29).

Considering Plaintiff's noted impairments and the assessment of a vocational

expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant

work (Tr. 34).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could

perform other jobs existing in significant numbers in the national economy, such as a scale

attendant, order clerk, and stone setter (Tr. 35–36).  Accordingly, based on Plaintiff's age,

education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff

not disabled (Tr. 36).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be

unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

4

standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.  Analysis

Plaintiff argues that the ALJ erred in her assessment of Plaintiff's RFC.  In particular, Plaintiff claims that the ALJ erred because she (1) did not properly evaluate Plaintiff's symptoms; (2) did not properly evaluate the medical opinion evidence; (3) failed to adequately account for Plaintiff's mental limitations; and (4) as a result of this flawed

RFC analysis, the ALJ's step five finding is not supported by substantial evidence. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. Symptom Evaluation

First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's symptoms when she concluded that the medical evidence did not support Plaintiff's allegations of limitations related to her chronic and radiating lower back pain (Tr. 26). In determining whether a claimant is disabled, the ALJ must consider all symptoms, including subjective pain complaints, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such

things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).   If an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for the decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Plaintiff alleged that she is able to stand or walk for no more than fifteen to thirty minutes at a time, before she must sit for fifteen to thirty minutes to recover (Tr. 26).  She also indicated that she is not able to sit for "too long" (Tr. 26, 276).  She alleged that these conditions resulted from her chronic and radiating lower back pain due to abnormalities in the lumbar spine (Tr. 26).  The ALJ concluded that these allegations were not supported by medical evidence (*Id.*).  The ALJ supported this finding with an in-depth discussion of Plaintiff's medical history:

> An MRI study of the claimant's lumbar spine on April 3, 2021, revealed a "large left paracentral nuclear herniation compressing the ventral thecal sac and left S1 nerve root" (Exhibit 1F/13 & 28).  After this study, the claimant underwent a "microdiscectomy" procedure at L5-S1 on April 5, 2021 (Exhibit 3F/12).  Treatment notes after this procedure on April 6, 2021, contain a recommendation for the claimant to use a single-point cane as an ambulatory aide (Exhibit 3F/16-21).  Five weeks after this procedure, the treatment notes on May 7, 2021, described the claimant's complaints of left lower extremity numbness, but also noted that she was "walking a fair amount" (Exhibit 6F/14-17).  Indeed, she is described as walking with a slow and steady gait using a cane with strength reduced in the left leg just to "4/5."  Similar observations and findings appear in treatment notes on June 3, 2021 (Exhibit 6F/18-20). On June 23, 2021, the claimant underwent a posterior lumbar interbody fusion surgery at L5-S1 (Exhibit 6F/45-47; see also Exhibit 7F).  A left lower extremity ultrasound on July 8, 2021, was unremarkable (Exhibit

6F/31-32). An MRI study of the claimant's lumbar spine on August 9, 2021, showed modest post-surgical changes (Exhibit 7F/11-13). On August 19, 2021, the treatment notes describe the claimant as able to walk with a single-point cane rather than a walker (Exhibit 8F/8-10). When Dr. Amy Griswold conducted a physical consultative examination of the claimant on September 14, 2021, she noted a normal range-of-motion across nearly all the claimant's joints and regions of her spine except for a loss in range-of-motion in the left knee and ankle (Exhibit 13F). She also noted that the claimant generally retained normal strength in all extremities including the right lower extremity. She did note a slight reduction of left lower extremity strength to "4/5." Interestingly, Dr. Griswold observed the claimant walking with a normal gait and standing with a normal stance, and indicated that in her view neither a walker nor a cane was necessary for the claimant to ambulate or stand, despite "mild" left foot drop. She also noted that the claimant's left leg raise was limited on the left side. A nerve conduction study of the claimant's lower extremities on November 16, 2021, revealed "left acute to subacute L5 radiculopathy" (Exhibit 17F). An MRI of the cervical spine on December 28, 2021, was unremarkable (Exhibit 20F/19). Dr. Michael King conducted an in-person examination of the claimant on February 16, 2022, and the claimant reported to Dr. King that her pain was mostly under control with some "numbness in the left foot" (Exhibit 20F/16-19). The claimant also reported to Dr. King "moderate activity level" that includes lifting weights at the gym about four days per week. On August 8, 2022, the claimant underwent treatment and complained of left lower extremity pain (Exhibit 24F/1-5). During this examination, the provider noted a left side positive straight-leg raising test with "bilateral" normal lower extremity strength, and normal sensation to light touch. These treatment notes even described a lack of instability when the claimant was walking or standing. The most recent treatment notes on March 10, 2023, describe the claimant's level of pain as "moderate," and notes the claimant using a cane with "4/5" left lower extremity strength (Exhibit 25F). Taken together, this evidence mostly does not support the claimant's allegations as to any limitations on sitting, but does support much of her allegations as to limitations on standing and walking, as well as a need for a single-point cane when walking and standing. Thus, the undersigned finds the claimant limited to the sitting, standing, and walking demands commensurate with sedentary level work. In addition, the undersigned finds the claimant would need a cane when ambulating to and from the workstation, and the undersigned finds that the claimant would need to change between sitting and standing positions every 20 to 60 minutes while staying on tasks at the workstation in order to cope with chronic and radiating lower back pain

> and muscle spasm.  The undersigned also included a limitation on operation of foot controls due to the lower extremity numbness, weakness, and other symptoms discussed above.

(Tr. 26–27).  In this analysis, Plaintiff takes issue with the ALJ's characterization of Dr. King's treatment notes dated February 16, 2022, August 8, 2022, and March 10, 2023, stating that the ALJ's summary of these notes are "inaccurate" and "do not provide a complete picture" of her condition during these visits (Doc. 14 at 13).

With respect to the February 16, 2022 treatment notes, the ALJ stated that "Dr. Michael King conducted an in-person examination of the claimant on February 16, 2022, and the claimant reported to Dr. King that her pain was mostly under control with some 'numbness in the left foot.'"  (Tr. 27).  Plaintiff argues that the ALJ erred in characterizing her pain as "mostly under control."  In reality, Plaintiff argues, Dr. King stated that Plaintiff had improved since her last evaluation, and if she was sedentary, her pain was under good control; as soon as she started becoming active however, the pain in her back became quite significant (Tr. 1332).  Plaintiff further argues that the ALJ's conclusion that Plaintiff's pain was under control is further undermined by Dr. King's subsequent referral to pain management.

Plaintiff has failed to show that the ALJ erred in her summary of Dr. King's February 16, 2022 treatment notes.  First, the ALJ did not conclude that Plaintiff did not suffer from pain, the ALJ only referenced Plaintiff's own statements to her physician that her pain was mostly under control.  And while the ALJ may not have clarified in her decision that Plaintiff reported that her pain was "mostly under control" *when sedentary*, the Court cannot find any error where the ALJ ultimately found the evidence supported

"much of her allegations on standing and walking" and limited Plaintiff to a reduced range of sedentary work (Tr. 27). Moreover, the mere fact that the ALJ may not have "provided a complete picture" of the February 16, 2022 visit with Dr. King is not error, as there is "no rigid requirement that the ALJ specifically refer to every piece of evidence" in a decision, let alone every detail about a particular piece of evidence. *Dyer*, 395 F.3d at 1211. Instead, the ALJ properly evaluated Plaintiff's condition as a whole, and found her subjective complaints as to sitting to be unsupported, but that her allegations of limitations as to standing and walking were supported, and as a result, limited Plaintiff to sedentary work.

As to the August 8, 2022 treatment notes, the ALJ stated that Plaintiff "underwent treatment and complained of left lower extremity pain. During this examination, the provider noted a left side positive straight-leg raising test with 'bilateral' normal lower extremity strength, and normal sensation to light touch. These treatment notes even described a lack of instability when the claimant was walking or standing." (Tr. 27). Plaintiff argues this characterization is flawed because the treatment note indicated that Plaintiff's pain symptoms occurred persistently and remained unchanged with previous treatments including activity modification, medication therapy, injections, physician-prescribed home exercise, and resting the area (Tr. 1427–30). Plaintiff also takes issue with the ALJ's failure to mention various exam findings that Plaintiff alleges support her allegations of pain, *i.e.*, she had an antalgic gait with moderate, diffuse lumbar tenderness; positive SLR; pain with lumbar range of motion and strength testing; and some pain in her back hip with hip motion.

Similarly, the ALJ stated that the March 10, 2023 treatment notes "describe the claimant's level of pain as 'moderate,' and notes the claimant using a cane with '4/5' left lower extremity strength." (Tr. 27). Again, Plaintiff takes issue with the ALJ's failure to include a discussion of the less benign findings, such as Dr. King's remark that Plaintiff "continues to be quite symptomatic with low back pain," and that she had hypoethesia to the touch and an antalgic gait with use of a walking cane (Tr. 1472–73).

While Plaintiff is correct that "[a]n ALJ may not 'cherry pick' evidence to support a finding of nondisability," that is not what the ALJ has done here. *Frangione v. Comm'r of Soc. Sec.*, No. 6:20-cv-1298-GJK, 2021 WL 9569655, at *5 (M.D. Fla. Sept. 24, 2021) (citing *Dicks v. Colvin*, No. 3:15-cv-934-J-MCR, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016)). As the *Frangione* court acknowledged, "there is a fine line between evaluating the decision for 'cherry-picking' and reweighing the evidence," and "[c]herry-picking will not be found where 'the record reflects that the ALJ considered all of the medical evidence . . . [and Claimant] has not shown that any medical evidence . . . contradicted the ALJ's conclusion.'" *Id.* (quoting *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 865 (11th Cir. 2012) (alterations in *Frangione*). Here, the record very clearly reflects that the ALJ considered all of the medical evidence, and Plaintiff has failed to establish that these treatment notes establish greater limitations on sitting.

Ultimately, Plaintiff's request is, at essence, a request that the Court substitute itself for the ALJ and reweigh the evidence, which is beyond the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her

contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original).  Plaintiff has failed to show that the ALJ erred in her evaluation of Plaintiff's subjective complaints and the medical evidence, and as a result, the decision of the ALJ should not be reversed on this basis.

### B.  Opinion Evaluation

Next, Plaintiff argues that the ALJ erred in evaluating the opinions of Dr. Michael King, M.D. and Liza Chuanico-Bolle, PT.  Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence.  *See* 20 C.F.R. § 404.1527(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on December 11, 2019 (Tr. 72).  As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). *Compare* §§ 404.1527(c), 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Moreover, the Eleventh Circuit has affirmed that these new regulations eliminate the treating physician rule. *Harner v. Comm'r of Soc. Sec.*, 38 F.4d 892, 897 (11th Cir. 2022) (noting that the Commissioner "determined that a change was required due to a shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams").

The new regulations require an ALJ to apply the same factors when considering opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are

supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source.  *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  While the ALJ must explain how he or she considered the supportability and consistency factors,

14

the ALJ need not explain how he or she considered the other three factors.[1]   20 C.F.R. §
404.1520c(b)(2).   And, in assessing the supportability and consistency of a medical
opinion, the regulations provide that the ALJ need only explain the consideration of these
factors on a source-by-source basis – the regulations do not require the ALJ to explain the
consideration of each opinion from the same source.   *See* 20 C.F.R. § 404.1520c(b)(1).

On August 25, 2021, Dr. King completed a "Physical Capacities Evaluation Form"
in which he opined that Plaintiff is not able to sit, stand, and walk for more than ten
minutes at a time (Tr. 575).   Dr. King also opined that Plaintiff has an impairment or
combination of impairments "which would reasonably conclude sustaining work for 8
hours per day, 5 days per week." (Tr. 576).   The ALJ found this opinion unpersuasive,
explaining in relevant part:

> The undersigned views this opinion as unpersuasive because the
> medical evidence does not support this opinion.   For example, this
> opinion indicated that the claimant is not able to sit, stand, or walk for
> more than 10 minutes at a time.   However, when Dr. Michael King
> conducted an in-person examination of the claimant on February 16,
> 2022, the claimant reported that her pain was mostly under control with
> some "numbness in the left foot."   She also reported to Dr. King
> "moderate activity level" that includes lifting weights at the gym about
> four days per week.   These treatment notes certainly do not support the
> limitation on sitting indicated in the opinion, and do not even support
> the degree of standing and walking limitations indicated in this opinion.

(Tr. 30) (exhibit citations omitted).

On October 27, 2021, Dr. King wrote a letter in which he opined that Plaintiff "is
unable to lift more than 10-15 pounds, and sit or stand for more than 2 hours in an 8-hour

---

[1] The exception is when the record contains differing but equally persuasive medical
opinions or prior administrative medical findings about the same issue.   *See* 20 C.F.R. §
404.1520c(b)(3).

day." (Tr. 1266).   The ALJ found this opinion "partially persuasive," agreeing that Plaintiff is unable to lift more than 10-15 pounds and is only able to stand for no more than two hours of an eight-hour workday (Tr. 30).  She then stated that she disagreed with Dr. King's opinion on Plaintiff's ability to sit more than two hours "because some of the most recent treatment notes describe the claimant's pain as more managed if she stays seated rather than stand, walk, or engage in various other activities where she would significantly exert herself." (*Id.*).  The ALJ then expressly referenced Dr. King's February 16, 2022 treatment notes, where Plaintiff reported that her pain was mostly under control with some numbness in the left foot (*Id.*; Tr. 1332).  Finally, the ALJ noted that March 10, 2023 treatment notes describe her level of pain as "moderate" and indicate 4/5 lower extremity strength (Tr. 31).[2]

On October 18, 2021, PT Chuanico-Bolle completed a Physical Capacities Evaluation Form in which she opined that Plaintiff can sit for less than two hours in an eight-hour workday and is not able to sit, stand, or walk for more than ten minutes at a

---

[2] On July 21, 2022, Dr. King wrote a nearly identical letter stating that Plaintiff is unable to sit, stand, or walk more than 2 hours in an 8-hour day (Tr. 1422).  On October 6, 2022, Dr. King completed another Physical Capacities Evaluation Form in which he again opined that Plaintiff could sit no more than 2 hours in an 8-hour workday (Tr. 1424). Because the opinions address the same issue and the ALJ gave the same reasons for finding them unpersuasive, the Court addresses these with the August 25, 2021 and October 27, 2021 opinions.  In addition, as set forth above, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

time (Tr. 1262–64). [3]  Once again, the ALJ found this opinion to be unpersuasive because it was unsupported by the medical evidence:

> The undersigned views [this opinion] as unpersuasive because the medical evidence does not support this opinion.  For example, this opinion indicated that the claimant is not able to sit, stand, or walk for more than 10 minutes at a time.  However, when Dr. Michael King conducted an in-person examination of the claimant on February 16, 2022, the claimant reported that her pain was mostly under control with some "numbness in the left foot."  She also reported to Dr. King "moderate activity level" that includes lifting weights at the gym about four days per week.  These treatment notes certainly do not support the limitation on sitting indicated in the opinion, and do not even support the degree of standing and walking limitations indicated in this opinion.

(Tr. 30) (exhibit citations omitted).

Plaintiff challenges the ALJ's evaluation of both Dr. King's and PT Chuanico-Bolle's opinions because she relied on Dr. King's February 16, 2022 and March 10, 2023 treatment notes in finding the opinions inconsistent with and unsupported by the medical evidence.  In essence, Plaintiff repackages her first argument that the ALJ mischaracterized Dr. King's treatment notes.  As a result of this mischaracterization, Plaintiff argues that the ALJ's finding that these opinions conflict with the medical evidence is not supported by substantial evidence because these treatment notes have been mischaracterized and do not qualify as substantial evidence.

The Court disagrees.  For the reasons explained above, the ALJ did not mischaracterize these treatment notes or "cherry pick" evidence.  Dr. King's February 16,

---

[3] The administrative record and the ALJ note that this opinion contains an illegible signature.  Nonetheless, Plaintiff represents that the opinion "appears to be from Liza Chuanico-Bolle, PT." (Doc. 14 at 24 & n.111).  For the purposes of this analysis, the Court assumes this is PT Chuanico-Bolle's opinion.

2022 treatment notes state that Plaintiff "has improved since her last evaluation" and that she "reports that if she is sedentary, her pain is under good control.  As she is sitting in my office today, she denies any pain but she does have some numbness in the left foot." (Tr. 1332).  On March 10, 2023, Plaintiff described her pain as "moderate" (Tr. 1472).  On both of these occasions, Dr. King also noted that Plaintiff has a moderate activity level and exercises with weights four days per week (Tr. 1333, 1473).  Taken together, this is substantial evidence in support of the ALJ's finding that Dr. King's and PT Chuanico-Bolle's opinions are not consistent with the medical evidence.[4] As a result, the ALJ did not err in her evaluation of Dr. King's and PT Chuanico-Bolle's opinions.

### C. Mental Impairments

Next, Plaintiff argues that the ALJ's RFC determination does not adequately account for Plaintiff's moderate limitation in the area of concentrating, persisting, or maintaining pace.  When an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Moore*, 405 F.3d at 1213–14.  The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five

---

[4] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the ALJ's findings are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Id.*  In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.

of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ found that Plaintiff had a moderate limitation in the area of concentrating, persisting, or maintaining pace (Tr. 23). The ALJ also found at steps two and three that Plaintiff had severe mental impairments but did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 22). Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC. The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 24). Specifically, the ALJ included the following nonexertional limitations in Plaintiff's RFC: "Work is limited to routine and repetitive tasks, performed in a work environment free from fast-paced assembly-line type production requirements." (Tr. 25).

Plaintiff argues that the limitation to routine and repetitive tasks, performed in a work environment free from fast-paced assembly-line type production requirements does not adequately account for her moderate limitation in the area of concentrating, persisting, or maintaining pace. Specifically, Plaintiff suggests that these limitations speak to the

nature of the work itself rather than her ability to stay on task.  The Commissioner responds that the ALJ's RFC adequately accounts for her moderate limitation in the area of concentrating, persisting, or maintaining pace because medical evidence demonstrates that she can perform this type of work.  The Court agrees.

In *Winschel v. Commissioner of Social Security*, the Eleventh Circuit rejected the argument that an ALJ adequately accounts for a claimant's limitations in concentrating, persisting, or maintaining pace by limiting the hypothetical to the VE to "simple, routine tasks or unskilled work."  631 F.3d at 1180.  The court provided a caveat to this holding, noting that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.*

Later, in *Neefe v. Commissioner of Social Security*, an unpublished decision, the Eleventh Circuit explained that the ALJ accounted for the claimant's limitations in concentrating, persisting, or maintaining pace "by considering and posing to the vocational expert that [the claimant] could perform only simple tasks in a low stress environment with only limited contact with the public." 531 F. App'x 1006, 1007 (11th Cir. 2013).  The court explained that, "[s]ince the ALJ determined that the medical evidence demonstrated that [the claimant] could engage in simple tasks, despite moderate limitation in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments, implicitly, by limiting the hypothetical that was posed to the vocational expert to include only simple tasks or unskilled work." *Id.*

Here, as in *Neefe*, substantial medical evidence supports the ALJ's conclusion that Plaintiff can perform routine and repetitive tasks in a work environment free from fast-paced assembly-line type production requirements, despite her moderate limitation in the area of concentrating, persisting, or maintaining pace.  In finding that Plaintiff had a moderate limitation in this area, the ALJ stated:

> At the hearing, the claimant alleged some difficulties with concentrating, persisting, or maintaining pace, although it seems difficult to parse what difficulties are more attributable to symptoms of physical impairments and side effects of treatments for these impairments, versus the symptoms and limiting effects of mental impairments such as depression and anxiety.  Dr. Jennifer Mendoza conducted a mental examination of the claimant on September 9, 2021, and she generally described the claimant's attention, concentration, and frustration tolerance as "adequate."  When Dr. Kathryn Bell conducted a thorough and independent review of the record on September 10, 2021, she concluded that the claimant has a mild limitation in the functional area of concentrating, persisting, or maintaining pace.  Dr. Eric Wiener conducted a thorough and independent review of the record on June 2, 2022, and he concluded that the claimant has a mild limitation in the functional area of concentrating, persisting, or maintaining pace.  Based on hearing testimony, the undersigned's auditory observations, and a thorough review of the record, the undersigned finds that the claimant has a moderate limitation in the functional area of concentrating, persisting, or maintaining pace. Indeed, the undersigned bases this finding largely on the claimant's self-reports under oath at the hearing about difficulties with sustaining concentration and maintaining pace.  To accommodate this moderate degree of limitation, the undersigned finds the claimant limited to performing simple and routine tasks, in a work environment free from fast-paced assembly-line type production requirements.

(Tr. 23–24) (exhibit citations omitted).

Thus, the ALJ expressly noted that she based her finding that Plaintiff has a moderate limitation in this area "largely" on Plaintiff's testimony (not the medical evidence), and she added these limitations to "accommodate this moderate degree of

limitation" (Tr. 22).  Moreover, when evaluating the opinion of Dr. Mendoza, the ALJ found "persuasive" her opinion that Plaintiff's attention, concentration, and frustration tolerance are "adequate" (Tr. 33).  And, in evaluating the opinions of Dr. Bell and Dr. Wiener, the ALJ discussed: (1) the conservative nature of Plaintiff's mental health treatment; (2) Plaintiff's work history, which shows that Plaintiff successfully worked for many years, and Plaintiff's testimony that her physical impairments forced her to stop working as opposed to her mental impairments; and (3) Plaintiff's testimony, which established that she was cooperative, focused, and attentive throughout the hearing (Tr. 32–33).

This is substantial medical evidence in support of the ALJ's RFC determination. *See also Mijenez v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that ALJ's RFC limitation to "understanding simple directions; making judgments and simple decisions pertaining to unskilled work" adequately accounted for moderate limitation in the area of concentrating, persisting, or maintaining pace where medical evidence showed that claimant "received mostly outpatient treatment for her bipolar disorder and affective mood disorders"); *Hernandez v. Saul*, No. 19-25041-CIV, 2020 WL 8083837, at *13–14 (S.D. Fla. Dec. 22, 2020) (holding that substantial medical evidence supported ALJ's conclusion that claimant could perform "simple, routine, and repetitive tasks and [have] occasional interactions with co-workers, supervisors, and the public, and occasional work-setting changes" despite his moderate limitation in the area of concentrating, persisting, or maintaining pace where the claimant's mental health records "consistently showed that Claimant's mental status exam findings were, for the most part, benign" and claimant was

stable on medications).  As a result, the ALJ's decision should not be reversed on this basis.

### D. Step Five

Finally, Plaintiff generally argues that each of the aforementioned errors made by the ALJ are not harmless because the VE testified that there are no jobs in the national economy for an individual "absent from work two to three days per month," "who could sit for 30 minutes," or "had to leave the workstation for 10 minutes every hour" (Tr. 72–73).  As an initial matter, and for the reasons explained above, the ALJ did not err in her evaluation of Plaintiff's symptoms, her evaluation of the medical opinions, or her evaluation of Plaintiff's mental RFC.  Therefore, a harmless error analysis is not appropriate in these circumstances.  And while Plaintiff accurately characterizes the VE's testimony, Plaintiff has not established that any these limitations apply to her.  As a result, Plaintiff's final argument is without merit, and the ALJ's decision will not be reversed on this basis.

### V.   Conclusion

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.      The decision of the Commissioner be affirmed.

2.      The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on July 29, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.